IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DEBRA A. WEITZMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:11-cv-6365-HO |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| | ) | |
| HEWLETT-PACKARD COMPANY, a | ) | |
| Delaware corporation; HEWLETT- | ) | |
| PACKARD DEFERRED PROFIT-SHARING | ) | |
| PLAN, an ERISA-governed | ) | |
| retirement plan; and HEWLETT- | ) | |
| PACKARD COMPANY RETIREMENT PLAN, | ) | |
| an ERISA-governed retirement | ) | |
| plan, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

        Plaintiff, Debra Weitzman, brings this case seeking benefits

1 - ORDER

pursuant to the Employee Retirement Security Act (ERISA).

## ALLEGATIONS

Plaintiff and Steven Weitzman married in 1979. On June 21, 2006, the Benton County Circuit Court entered a general judgment dissolving the marriage. Steven Weitzman worked at defendant Hewlett-Packard (HP) during the entirety of the marriage.

HP sponsored the defendants retirement plan and deferred profit sharing plan as part of the retirement benefits offered to its employees. Steven Weitzman participated in the plans and retired effective May 31, 2007.

On November 11, 2004, plaintiff notified HP of the pending dissolution of her marriage to Steven Weitzman and requested placement of an administrative hold on his retirement accounts. HP placed a "QDRO restriction flag" on the accounts pending determination of plaintiff's interest in the accounts.

The general judgment of dissolution awarded plaintiff a 50% interest in the marital portion of Steven Weitzman's account balances in the plans. On March 14, 2007, the Benton County Court entered a supplemental judgment to the same effect, as to the retirement benefits. Plaintiff and Steven Weitzman agreed to have a retirement benefits attorney prepare further, more tailored qualified domestic relations orders (QDRO's) for execution by the court and submission to the Plans.

2 - ORDER

On June 26, 2007, the QDRO attorney forwarded draft QDROs to the Plans for determination whether the Plans viewed them as qualified within the meaning of ERISA.[1]  The QDRO procedures and policies governing the Plans require an administrative lien be placed on 50% of the participant's accrued balance in the Plans for six months upon receipt of the draft QDRO.  However, on or about July 6, 2007, the plans made a lump-sum payment to Steven Weitzman of the entire account balances of $246,099.57 from the deferred profit sharing plan and $303,347.75 from the retirement plan. Plaintiff alleges, pursuant to the judgments of dissolution, she was entitled to at least $72,573.87 from the retirement plan and $123.049.79 from the deferred profit sharing plan.  The distributed funds were placed into an individual retirement account (IRA) by Steven Weitzman.

Plaintiff alleges she had a new QDRO entered by the Benton County Court to divide the IRA, but before the QDRO was implemented, the IRA's balance plummeted due to Steven Weitzman's investment planning.  Plaintiff contends her share of the IRA amounted to only $48,877.97 as a result.

Plaintiff alleges that she attempted to reach an informal resolution with the Plans, but that the Plans refused to compensate plaintiff and denied liability.  Plaintiff and Steven Weitzman then

---

[1]On July 10, 2007, HP notified plaintiff's QDRO attorney that the draft orders required revision to be qualified under ERISA and the Internal Revenue Code.

entered into stipulated orders regarding the plaintiff's interest
in the deferred profit sharing plan and the retirement plan and the
court entered the orders on February 16, 2011.

## DISCUSSION

Plaintiff asserts two claims for relief under ERISA.  First,
she contends that the general judgment and supplemental judgment
regarding dissolution of her marriage to Steven Weitzman qualify as
QDROs and require defendants to pay her at least $195,623.66 of the
funds distributed, minus the $48,877.97 she already recovered.
Alternatively, plaintiff contends that the February 16, 2011 orders
should be enforced as QDROs requiring defendants to make the
distributions calculated in those orders.

Defendants move to dismiss asserting that the complaint and
the documents upon which it relies demonstrate that the relief she
seeks is prohibited by ERISA.  Moreover, defendants contend that
plaintiff has waived any claims for relief against them by virtue
of obtaining the February 16, 2011 orders.

An action under ERISA may be brought by a plan participant or
beneficiary

> to recover benefits due to him under the terms of his
> plan, to enforce his rights under the terms of the plan,
> or to clarify his rights to future benefits under the
> terms of the plan

29 U.S.C. § 1132(a)(1)(B).

Except to defray plan administrative costs, benefits under a

4 - ORDER

plan may not be assigned or alienated.  29 U.S.C. § 1056(d)(1) and

(2).  This restriction also applies to domestic relations orders,

unless the order is determined to be a QDRO.    29 U.S.C. §

1056(3)(A).  A domestic relations order is

> any judgment, decree, or order (including approval of a
> property settlement agreement) which--

>> (I) relates to the provision of child support,
>> alimony payments, or marital property rights
>> to a spouse, former spouse, child, or other
>> dependent of a participant, and

>> (II) is made pursuant to a State domestic
>> relations law (including a community property
>> law).

29 U.S.C. § 1056(d)(B)(ii).

> A QDRO is a domestic relations order

> which creates or recognizes the existence of an alternate
> payee's right to, or assigns to an alternate payee the
> right to, receive all or a portion of the benefits
> payable with respect to a participant under a plan, and

> . . . .

> clearly specifies--

> (I) the name and the last known mailing address (if any)
> of the participant and the name and mailing address of
> each alternate payee covered by the order,

> (ii) the amount or percentage of the participant's
> benefits to be paid by the plan to each such alternate
> payee, or the manner in which such amount or percentage
> is to be determined,

> (iii) the number of payments or period to which such
> order applies, and

> (iv) each plan to which such order applies.

[and]

5 - ORDER

(I) does not require a plan to provide any type or form
of benefit, or any option, not otherwise provided under
the plan,

(ii) does not require the plan to provide increased
benefits (determined on the basis of actuarial value),
and

(iii) does not require the payment of benefits to an
alternate payee which are required to be paid to another
alternate payee under another order previously determined
to be a qualified domestic relations order.

29 U.S.C. § 1056(d)(B-C).

The primary issue before the court by the motion to dismiss is
the requirement that the subject orders not require the Plans to
provide increased benefits (determined on the basis of actuarial
value). In essence, defendants contend that the lump-sum
distribution to Steven Weitzman either resulted in: (1) plaintiff's
entitlement being reduced to zero because it predated the date upon
which the orders can be interpreted to provide plaintiff an
election to receive benefits (Steven Weitzman's earliest retirement
date of July 18, 2009); or (2) requiring the Plans to provide
increased benefits because there currently are no benefits in the
accounts under the plans.

The purpose of the QDRO exception is, in part, to address the
inequities that might be suffered by women who are the economic
victims of divorce or separation. Ablamis v. Roper, 937 F.2s 1450,
1454 (9th Cir. 1991). Defendants' reading of the requirements for
QDROs effectively permits plan administrators to eviscerate the
very purpose of the exception when they mistakenly distribute

6 - ORDER

account balances to the participant spouse in violation of their own policies placing a hold on the accounts pending QDRO certification.

Although the initial judgments of dissolution contemplated further orders specifically tailored to the ERISA requirements of for QDROs, defendants made that process moot when it mistakenly made a lump-sum distribution of the account balances to Steven Weitzman. Technically, distributing any further funds to plaintiff in the amounts contemplated in those judgments would require the Plans to provide increased benefits. But the statute modifies the term increase benefits to determination based on actuarial value.

In addition to the general maxims of statutory construction such as examination of text and context and examination of legislative history, there is the principle that courts do not construe statutes in a manner that would lead to absurd results. Ma v. Ashcroft, 361 F.3d 553, 561 (9th Cir. 2004). Similarly, courts do not impute to Congress an intent to create a law that produces an unreasonable result. United States v. Kaldenberg, 429 F.2d 161, 164 (9th Cir. 1970).

ERISA provides that "[d]uring any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, by a court of competent jurisdiction, or otherwise), the plan administrator shall separately account for the amounts ... which

7 - ORDER

would have been payable to the alternate payee during such period
if the order had been determined to be a qualified domestic
relations order...." 29 U.S.C. § 1056(d)(3)(H)(I).  Given this
context it would be absurd to construe section 1056(d)(3)(ii) as
prohibiting an otherwise permissible QDRO from falling under the
exception for a qualified domestic relations order simply because
the failure to follow section 1056(d)(3)(H)(I) had been violated by
the plan administrator.[2]  At a minimum, plaintiff alleges a claim
to enforce her right to obtain a valid QDRO in her first claim for
relief.  See Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207
F.3d 1143, 1157 (9th Cir. 2000) (defendants denied plaintiff the
opportunity to obtain a valid QDRO and therefore plaintiff had
standing to bring an action to protect her right to obtain a valid
QDRO).  Taking Stewart a step further, to deny any ability now to
obtain a valid QDRO because the Plans' own violation of section
1056(d)(3)(H)(I) would increase the benefits payable by the plan,
would impute to Congress an intent to create a law that produces an
unreasonable result.[3]

_____

[2]ERISA requires a plan to establish reasonable procedures to
determine the qualified status of domestic relations orders.  29
U.S.C. § 1056(d)(3)(G)(ii).  The complaint alleges that defendants
failed to follow their own procedures in this regard by making the
lump-sum distribution.

[3]Defendants' cite to Samaroo v. Samaroo, 193 F.3d 185, 189-90
(3d Cir. 1999) does not suggest otherwise.  The Samaroo, court
merely determined that allowing a plan participant (where no QDRO
had been entered) to preserve the right to confer benefits on a new
wife as long as he was alive, and then to designate his ex-spouse

Moreover, the requirement highlighted by defendants applies to actuarial value which commonly relates to statistical calculations especially of life expectancies. Indeed, the legislative history to the exception presents illustrations concerning that common understanding. See Statement of Representative William Clay, August 9, 1984, 130 Cong. Rec. 23486 at 23486-87 (noting that increased value is to be determined on the basis of actuarial value and providing four examples). Accordingly, plaintiff's first claim for relief permits the case to go forward at least as to the right to submit a QDRO based on the conferral of benefits in the dissolution of marriage judgments. Furthermore, defendants alleged failure to follow ERISA's and its own procedures cannot be used as a shield to assert that any QDRO would necessarily increase the benefits payable under the subsequent orders entered on February 16, 2011.

Defendants also argue that plaintiff waived any remedies she may have against them by virtue of the February 16, 2011 orders. In those orders, Steven Weitzman and plaintiff stipulated that

To the extent that either the Participant or the Alternate Payee receives a benefit distribution in excess of the amount to which he or she is entitled, the party having received the excess benefit amount shall either

---

as the surviving spouse after his death, is allowing him to have his cake and eat it too. Id. at 191. ERISA prohibits designating a former spouse as a participating surviving spouse and treating a current wife as a spouse for purposes of a plan to the extent of the participation of the former via the QDRO. 29 U.S.C. § 1056(d)(3)(F).

9 - ORDER

return such amount to Fidelity for repayment into the
DPSP, or shall make direct payment to the other party.
Each party shall be under a duty of inquiry to ascertain
that the share he or she is receiving is correct and does
not contain the other party's share of the benefits.

Exhibit 3 at ¶ 11 and Exhibit 4 at ¶ 13 to Complaint (#1).

Defendant argues that plaintiff knew of the lump-sum
distribution prior to seeking the above orders and knew that the
defendant Plans had denied her request to distribute funds to her.
Defendants, therefore, assert that plaintiff's remedy is now
against Steven Weitzman for the excess distribution. The court
declines to find that the above provision precludes a set of facts
that demonstrate that plaintiff has not made a voluntary
relinquishment of a known right against the Plans. The above
stipulation appears to provide plaintiff with the option to either
force direct payment from Weitzman or repayment to the Plan. In
the event of the latter, plaintiff may then assert a claim for
distribution from the Plans themselves. At this stage of the
proceedings, the court is not faced with the issue of whether
Steven Weitzman can repay the Plans for overpayment or whether the
Plans may seek repayment from Steven Weitzman in order to fulfill
its obligations to plaintiff under ERISA. Accordingly, the motion
to dismiss is denied.

10 - ORDER

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss (#9) is denied.

DATED this ___20th___ day of March, 2012.

_Michael C. Horan_
United States District Judge

11 - ORDER